**United States District Court**
<u>**Southern District of New York**</u>

| | |
|---|---|
| **United States of America** | |
| - against - | **Attorney's Affirmation** |
| | **Ind. # S1 07 Cr. 699 (HB)** |
| **Lorenzo Rodriguez,** *et al.*, | |
| **Bryant de los Santos,** | |
|               **Defendant** | |

      **Louis R. Aidala**, an attorney duly admitted to practice law in the Courts of the State of New York and the Southern and Eastern Districts of New York, affirms and says the following under the penalty of perjury:

      I am the attorney for **Bryant de los Santos**, one of the defendants herein, and am fully familiar with the facts of this case. With regard to the above-captioned superseding Indictment, returned by the Grand Jury on October 3, 2007, I submit this affirmation in support of the within motions to suppress physical evidence and statements obtained from the defendant following his unlawful arrest without probable cause, and for other relief.

**<u>Facts:</u>**

      The instant charges resulted from a sting operation in which a confidential informant (CI), working with law enforcement officers, approached the co-defendant, Lorenzo Rodriguez[1], *aka* "Flaco", about robbing individual(s) who allegedly possessed approximately 25 kilograms of cocaine. Over the course of several weeks in June 2007, the CI made a series of consensually monitored and recorded phone calls to Flaco to discuss the purported "robbery", and introduced him to an undercover officer ("UC"), who claimed he worked for a group of Colombians who had not paid

---

[1] Rodriguez was originally named in the Complaint as Juan Herrera, *aka* Flaco.

him, and that he wanted to rob them of the drugs in retaliation. Tio, Flaco and the UC agreed that the UC would keep 10 kilos and that they would keep the rest. In reality, of course, there were no Colombians and there were no drugs to be stolen.

According to the Complaint, Flaco and co-defendant Jose Cirrasquillo, *aka* "Tio", met with the UC and discussed the details of the "robbery". Tio told the UC he would recruit 2 or 3 other individuals.

On the day of the "robbery" Tio and Flaco met with the UC. A disagreement ensued and Flaco said he wanted to call it off. The CI intervened and convinced Flaco to go ahead with the plans. The UC drove Flaco to a vehicle driven by Tio, which Flaco entered. According to the Complaint the UC saw a Range Rover pull up behind Tio's vehicle outside a storage facility.[2]

The Complaint made no mention of any individuals having been observed inside the Range Rover prior to the arrest, or of any signals or other communications passing between the Range Rover and Tio's vehicle, or their respective occupants. Nor was there any mention in the Complaint that Flaco or Tio had ever described any of the other "participants" or the vehicle in which the other "participants" would be riding - or even that they would be riding in a vehicle.

It is apparent that the sole basis for arresting defendant was his presence in the vehicle near the location where the two co-defendants, Flaco and Tio, had arranged to meet the UC. Such circumstances do not amount to probable cause to arrest. Indeed, it is submitted that such circumstances do not even amount to reasonable suspicion. Defendant's arrest absent probable cause

---

[2] Defendant and 3 other individuals, including co-defendant Demi Abrihim, were inside the Range Rover. Defendant and Abrihim were seated in the back seat.

was illegal.

Following his unlawful arrest, defendant was taken to ATF offices and questioned for several hours by law enforcement officers, to whom he made a statement. Defendant's cell phone was also seized by the officers. Because the arrest was illegal, all evidence - physical or otherwise - obtained as a result thereof must be suppressed.

**The Law on Probable Cause**

It is well settled that mere presence at the scene of a crime does not provide probable cause to arrest. United States v. DiRe, 332 U.S. 581 (1948); Ybarra v. Illinois, 442 U.S. 85 (1979); United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990); United States v. Almanzar, 749 F. Supp. 538, 540 (SDNY 1990); United States v. Johnson-Guzman, 1998 U.S. Dist. LEXIS 16187.

In the instant case, defendant De Los Santos was merely seated in the rear of a vehicle, driven by another, that was near the location where a robbery - actually, a sting operation concocted by law enforcement agents and a CI - was supposed to take place. There was simply no valid reason to arrest him.

There was no claim, for example, that the events took place at an unusual hour, *e.g.*, late at night or early morning, or that the location was deserted or desolate (which might make the presence of the vehicle suspicious), or even that the vehicle drove around the block a few times in a suspicious manner before parking, (which might signal that its occupants were going to engage in some kind of criminal activity). Indeed, the location itself, *i.e.,* a storage facility, is one where cars would normally be expected to drive by and/or park. Thus, there was nothing about the presence of the Range Rover at the location that gave rise to probable cause to arrest its occupants.

Probable cause to arrest exists if police officers "have knowledge or reasonably trustworthy

information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). Nonetheless, mere presence is an apartment where contraband is found is insufficient to establish probable cause to arrest a person when there is no reason to link that person to the illegal items. See e.g., Ybarra v. Illinois, 444 U.S. at 93 (emphasis added). Similarly, a defendant's presence in a vehicle near the location where an alleged crime is about to occur, absent more, is insufficient to establish probable cause to arrest him.

Probable Cause to Arrest Was Lacking and Suppression is Required

    Clearly, in the instant case, there were no other factors to combine with his mere presence at the scene, in the rear seat of a vehicle occupied by three other individuals, that would establish probable cause to arrest Bryant De Los Santos, and it is apparent that his arrest was based solely on his presence in a vehicle at or near the scene.  This is insufficient to establish probable cause that he was involved in any criminal activity and all physical evidence and statements obtained as a result thereof must be suppressed as the fruits of the illegal arrest. See, Wong Sun v. United States, 371 U.S. 471 (l963); Silverthorne Lumber v. United States, 251 U.S. 385 (1920); United States v. Atkinson, 653 F. Supp. 668, 678 (SDNY 1987); Dunaway v. New York, 442 U.S. 200 (1979).

    The detectives in this case simply arrested all four individuals in the Range Rover, and questioned all of them, including De Los Santos, and eventually released two of them.[3] Clearly the detectives were engaged in a fishing expedition, with no prior information to connect any of the

---

[3] One of the released individuals, Pedro Cabrera, was subsequently named in the superceding indictment that was filed by the government this week.

individuals to any criminal activity. This type of unlawful arrest, followed by investigatory questioning, must result in suppression of a defendant's statements. See, Brown v. Illinois, 422 U.S. 590 (1975).

There was no significant lapse of time or any intervening circumstances between the arrest and questioning to attenuate the taint of the illegal arrest. In fact, defendant was questioned for several hours immediately following his arrest and eventual statement. The fact that he was given Miranda warnings is also insufficient to purge the taint of the unlawful arrest. Id. As the Supreme Court further noted in Brown, *Id*. at 600-603:

> "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." (371 U.S., at 486). Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment...... If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. [citing Davis v. Mississippi, 394 U.S. 721, 726-727 (1969)]. Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure-all," and the constitutional

guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words'." [quoting Mapp v. Ohio, 367 US 643, 648 (1961)]

The statement and physical evidence obtained from Bryant de Los Santos must therefore be suppressed as the fruits of the poisonous tree.

Brady and Giglio Material

The rule promulgated by the Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963) requires the prosecution to disclose to the defense evidence favorable to the accused and material to guilt or punishment. See also, Moore v. Illinois, 408 U.S. 786 (1972). The rule in Brady has repeatedly been interpreted by the courts as requiring the disclosure of impeachment material. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." Giglio v. United States, 405 U.S. 150, 154 (1972), quoting Napue v. Illinois, 360 U.S. 264, 269 (1959). Indeed, Giglio stands for the very proposition that exculpatory evidence includes material which may well alter the jury's judgment of the credibility of a crucial prosecution witness as well as that which goes to the heart of the defendant's guilt or innocence. This is so because guilt or innocence may turn on the credibility of a given witness alone.

In United States v. Bagley, 473 U.S. 667 (1985), the Supreme Court expressly ruled that the failure to disclose impeachment evidence is subject to the same standard as any other exculpatory evidence. With these fundamental precepts in mind, it is respectfully requested that the Court compel the government to disclose impeachment material for its witnesses as soon as it becomes available.

In any event, the case law requires that impeachment material be provided to the defense in

the same manner as any other exculpatory material and that is on a continuing basis. <u>United States v. Taylor</u>, 707 F.Supp 696 (S.D.N.Y. 1989). ("The government is under a continuing duty to provide a defendant, upon request, with information material either to guilt or punishment, and the government's suppression of such information, even in good faith, violates due process...Information which might impeach a government witness and any exculpatory statement made by a government witness should be disclosed under Brady.")  (Citations omitted); <u>United States v. Gleason</u>, 265 F. Supp. 880, 887 (S.D.N.Y., 1967) (due process requirements override the statutory provisions of §3500).

The Constitutional principles embodied in <u>Brady</u>, <u>Giglio</u>, <u>Bagley</u>, and their progeny require that all potential impeachment evidence and information be provided forthwith.

<u>Fed. R. Evid 404b Disclosure</u>

Defendant seeks, pursuant to Rules 404(b) and 403 of the Federal Rules of Evidence, to preclude the Government from introducing at trial evidence of any prior bad or illegal acts or criminal convictions. In the alternative, the defendant respectfully requests the Court, pursuant to Fed. R. Crim. P. 16 (a)(1)(c), to direct the government to disclose any and all bad acts which the government intends to introduce against the defendant in such sufficient and reasonable time that he will have a meaningful opportunity to move to preclude the introduction of such evidence.

Wherefore, it is respectfully requested that the within relief be granted in every respect.

Dated: New York, NY
      October 5, 2007

                                                Respectfully submitted,

                                                             Louis R. Aidala