# LOUIS R. AIDALA

**Attorney at Law**
**597 Fifth Avenue**
**New York, NY 10017**

**Ph: (212) 750 9700**                                                                 **Fax:   (212) 750 8297**


*Via fax and ECF*

                                                                November 21, 2007


Hon. Harold Baer, USDJ
United States Courthouse
500 Pearl St.
New York, NY 10007

                                        Re: USA v. Bryant De Los Santos
                                        <u># 07 Cr. 699 (HB)</u>

Dear Judge Baer:

        This memorandum is written to address certain issues regarding the suppression hearing that was held on Monday, November 19, 2007, in the above-referenced matter.  Defendant maintains that the government failed to sustain its burden of proving that probable cause existed for his arrest. Therefore, defendant's motion to suppress his post arrest statements to police and any other evidence obtained as a result of the unlawful arrest must be granted.

<u>A.  The Complaint and the Hearing Testimony Were Insufficient</u>

        As set forth in defendant's motion papers, the facts set forth in the Complaint failed to establish that probable cause existed for his arrest. The Court could have granted defendant's motion - even without a hearing - based solely on the government's erroneous claim that the Complaint was sufficient. Further, even though a hearing was held, inexplicably, no testimony was adduced by the government at the hearing in an attempt to establish probable cause to arrest Mr. De Los Santos, as it was required to do.

        In its response to defendant's motion, the prosecutor alleged that probable cause existed because: 1) the co-defendants Rodriguez and Cirrasquillo, aka "Flaco" and "Tio", respectively, told the UC that others would be participating in the robbery with them; and 2) that the Range Rover in which defendant and three others were riding "followed the UC, Rodriguez, and Cirrasquillo for several blocks, for several turns, to the storage facility where the group was going to meet to do the robbery". (Govt. Let, p. 11, ¶ 2).  Not only is the aforementioned letter to the Court <u>not</u> evidence of

1

the facts stated therein, but there was also no such testimony at the hearing.

The government's claims in said letter are flawed in several respects. First, there was no claim in the Complaint that the Range Rover followed the other vehicles "for several blocks, for several turns" to the storage facility, as the prosecutor set forth as a fact in his letter. The Complaint merely alleged that "The UC proceeded to a pre-determined location inside a storage facility, and was followed by the vehicle driven by Cirrasquillo and the Range Rover". (Complaint, p. 5, ¶ 11). There was no mention of either the distance traveled or the route taken. Nor was there any proof that the Range Rover "followed" the other vehicles - as opposed to simply having traveled in the same direction after the other vehicles had come. Finally, there was no hearing testimony which supported the facts alleged by the government as to the vehicles driving for "several blocks and several turns".[1]

Clearly, the Court may not accept the unsworn, "hearsay testimony" of the prosecutor as to what allegedly occurred. Rather, the government has the burden of establishing the facts through sworn testimony by a witness presented at a hearing. See, *e.g.,* United States v. Amento, 1987 US Dist. Lexis 10108, at p.9 (SDNY).

In the instant case, the single officer who testified failed to support the prosecutor's allegations. Moreover, even if he had, said facts would still not amount to probable cause to arrest. Nor did the officer add anything to the scant and insufficient allegations in the Complaint in order to establish probable cause to arrest.[2]

Probable cause to arrest "exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed". United States v. Ginsberg", 758 F 2d 823, 828 (2d Cir. 1985). "[T]he relevance of the suspect's

---

[1]Even if such testimony had occurred, it still would not establish probable cause to arrest, for, absent more, there is nothing unusual about two vehicles traveling in the same direction to get from one location to another, particularly during the daylight hours, around 4 p.m., in the month of June, in a heavily trafficked area of the Bronx.

[2]The government failed to even prove the existence of the confidential informant who allegedly initiated the sting operation, much less his reliability, as there was no testimony regarding at all regarding said informant by anyone who had any alleged contact with him.

conduct should be sufficiently articulable that its import can be understood by the average reasonably prudent person". United States v. Fisher, 702 F. 2d 372, 378 (2d Cir. 1983). Moreover, "ambiguous conduct does not provide probable cause for arrest." Id. "Thus, where an individual's behavior is as consistent with legitimate activity as it is with criminal activity, there is **not** probable cause to arrest". United States v. Amento, *supra* at p.8, citing United States v. Welker, 689 F. 2d 167 (10th Cir. 1982). (emphasis added).

In the instant case, the fact that the vehicle in which defendant was a passenger happened to proceed in the same direction as the UC's vehicle - in a heavily trafficked area, in mid-afternoon on a summer day - to a spot outside a storage facility that was open for business falls far short of establishing probable cause. There was not even an allegation that the individuals in the Range Rover in which defendant was riding communicated in any way - *e.g., via* a hand signal, a horn honking, *etc.,* - with the car in which co-defendants Tio and Flaco were riding, or that the two vehicles were contiguous to each other. Nor was there any claim that the UC had a description of the alleged other participants in the robbery, or the vehicle in which they would be riding. In fact, the government's hearing witness conceded that law enforcement had never heard of, or seen the defendant, prior to the time of his arrest, when he was seated in the rear of the vehicle containing three other occupants. Finally, although a video was made of the UC's car, there was no video or other record made of the vehicle in which the defendant was seated or of the vehicle containing co-defendants Tio and Flaco. Thus, there were no articulable facts pointing to criminal activity or any connection between the two vehicles or their occupants. Indeed, if driving for a short distance in the same direction as a vehicle believed to be, or about to be, engaged in a crime, were sufficient to establish probable cause to arrest, all innocent citizens would be in danger of being arrested at any given time. (Here, there was not even any testimony regarding an alleged crime by anyone).

Clearly, as originally contended by the defendant, based on the information set forth in the Complaint, the conduct of the defendant in the car in which he was a passenger was entirely consistent with legitimate activity and probable cause to arrest him - as well as the others in the same vehicle - was lacking. The statements and any other evidence obtained as a result of the unlawful arrest must therefore be suppressed.

Further in this regard, it cannot be overlooked that, while the four occupants of the vehicle in which defendant was seated were arrested, two of them - who presumably did not make any statements - were released that same day. Only De Los Santos and co-defendant Demi Abrahim, each of whom made self-incriminating statements, were charged. The other two arrestees from the same vehicle, who did not make any admissions to police, were released.[3] This supports the

_____

[3]One of the two, Pedro Cabrera, the driver of the vehicle in which defendant was seated, was re-arrested and indicted in the instant case several months later. According to information contained in the discovery provided by the government, Cabrera was overheard discussing this case and making incriminating statements during electronic surveillance which was being conducted in an **unrelated** case, subsequent to the initial arrests herein. Thus, similar to De Los Santos and Abrahim, it was the statements of Cabrera - albeit not made to police - that provided probable cause for his eventual re-arrest.

contention regarding the "outrageous conduct" by law enforcement in arresting and then seeking an incriminating statement to establish probable cause.

It is not difficult to infer that the police knew they only had probable cause **after** De Los Santos and Abrahim made admissions, and not at the time of their arrest in the vehicle outside the storage facility. As stated in defendant's moving papers, this type of "arrest" for investigatory purposes is improper and requires suppression. <u>Brown v. Illinois</u>, 422 US 590 (1975); <u>Dunaway v. New York</u>, 442 U.S. 200 (1979).

<u>B. The Statements Should Also Be Suppressed Based on Defects in the Questioning of Defendant.</u>

Besides the clear Constitutional violation based on lack of probable cause to arrest, there were other defects in the questioning of defendant. For example, although he signed a waiver of his <u>Miranda</u> rights, the form given to De Los Santos to read did not ask, or indicate in any way, whether he understood each of his rights. Only his initials were placed after each one, perhaps indicating that he had read same, but certainly not indicating that he understood. (See, Shanhai, 3501-C).

In addition, the tape recording of defendant's statement that was provided by the government indicates that defendant was questioned by police prior to the recording that was eventually made. The officer referred to prior questioning and statements during the eventual recording.[4] In effect, the officer conducted a "dress rehearsal" for the recorded statement. There is, of course, no way of knowing what preceded the recorded statement, *e.g.,* coaching or intimidation, or other tactics designed to elicit the information the police wanted to hear. The police obviously had the means to record the entire interrogation but chose not to, obviously waiting until they were certain defendant would say what they wanted to hear and selectively recording his statement. Under these circumstances, and because of these improprieties, defendant's statement should be deemed involuntary and unreliable and should be suppressed on this basis also.

To determine the voluntariness of a defendant's confession, the court must examine the totality of circumstances and assess whether "the conduct of law enforcement officials was such as to overbear [defendant's] will to resist and bring about confessions not freely self-determined". <u>United States v. Alvarado</u>, 882 F 2d 645, 649 (2d Cir. 1989). It is the government's burden to prove the voluntariness of a confession...by a preponderance of the evidence. <u>Lego v. Twomey</u>, 404 US 477, 482-84 (1972). Factors to be considered in determining voluntariness include "the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation". <u>United States v. Mast</u>, 735 F 2d 745, 749 (2d Cir. 1984). The Court may find involuntariness of a confession based on police misconduct. <u>Colorado v. Connelly</u>, 479 US 157 (1986).

---

[4] Officer Shanhai testified at the hearing that it is his practice to question defendants prior to recording their statements.

C.  Conclusion

  For all of the foregoing reasons, defendant's statements and any physical evidence taken from him at the time of his arrest must be suppressed.

        Respectfully,


        Louis R. Aidala
        Attorney for Bryant De Los Santos

cc: Todd Blanche, AUSA, (by ECF)
  All counsel (by ECF)

6