# LOUIS R. AIDALA

Attorney at Law
546 Fifth Avenue
New York, NY 10036

Ph: (212) 750 9700                                                                                           Fax:   (212) 750 8297

*Via Fax and ECF*

May 26, 2008

Hon. Harold Baer, Jr.
United States District Judge
United States Court House
500 Pearl St.
New York, NY 10007

                                                                                    Re: US v. Bryant de Los Santos
                                                                                          # S4 07 Cr. 699 (HB)

Dear Judge Baer:

    This letter is written in anticipation of the sentencing of Bryant de Los Santos, which is scheduled to take place before Your Honor on June 12, 2008. Pursuant to the terms of the plea agreement, and for the reasons set forth herein, it is respectfully requested that the Court impose a non-guidelines sentence of 60 months, which is the statutory minimum on the drug count. It is submitted that such a sentence is sufficient, but not greater than necessary, to serve the sentence goals of 18 U.S.C. 3553(a).

**I.  The Pre Sentence Report**

    Initially, the following corrections to the Pre-sentence Report should be noted:

    ¶ 49.  The first Amended PSR, filed with the Addendum, erroneously stated that defendant obstructed justice by making a false statement in an affidavit to the Court. This was clearly an error on the part of the Probation Department - most likely a word processing error - as there was never an issue regarding Obstruction of Justice as to De Los Santos.

    At counsel's request, the Probation Department corrected its error in the PSR that was sent to the Court on April 15, 2008. The cover letter from the Probation Department that accompanied the second Amended PSR stated that changes were made, however, it did not specify the nature of the changes. Said information is included herein in order for the record to clearly reflect that De Los

Santos did not obstruct justice, nor was there ever any issue regarding same.

¶ 71. Defendant's parents separated in 2002, not one year ago, as stated in the last sentence.

## II.  Facts:

a.  The Offense Conduct

As the Court is aware, this case involved a sting operation concocted by a confidential informant and law enforcement agents. The informant, who had committed robberies in the past, approached co-defendant Lorenzo Rodriguez about robbing a bogus drug dealer of "25-30 kilograms" of cocaine.[1] Over the course of a few weeks in early June, Lorenzo and co-defendant Jacinto de la Cruz engaged in a number of meetings and phone conversations with the CI and an undercover agent (UC) to discuss the plans for the intended "robbery". The phone calls and meetings were consensually monitored.

There were discussions among the UC, the CI, and the two co-defendants, Rodriguez and de la Cruz, about how they would commit the "robbery" and how they would split the narcotics. De la Cruz said he was going to recruit other individuals to take part.

Unbeknownst to Rodriguez and de la Cruz, of course, there was no drug dealer and there was no cocaine.

Defendant, Bryant de los Santos, did not take part in any of the meetings or phone conversations prior to the day of the robbery. He had no contact at all with either the UC or the CI, and, in fact, was only contacted by de la Cruz, an older man whom he knew as "Tio", a day or two before the planned "robbery".

On the day of the planned "robbery", de los Santos was riding in the back seat of a Range Rover that pulled up to the curb outside a storage facility where the robbery was to take place. Three other individuals also occupied the Range Rover. Rodriguez and de la Cruz, who planned the "robbery" with the UC, were riding in another vehicle which drove to the storage facility. On arrival, Rodriguez and the UC exited their respective vehicles and entered the storage facility. De Los Santos and the other three individuals in the Range Rover, did nothing and remained seated in the Range Rover. A short time later, all of the defendants were arrested.

---

[1] According to the PSR, the more accurate quantity of the bogus narcotics was 6-10 kilos, information that was corroborated by "other individuals involved in the offense". (PSR, p.10, n. 2). Nevertheless, the Complaint alleged a much larger amount of 25-30 kilos. See, *infra,* fn 2.

The two vehicles in which the defendants were riding were searched and no weapons, or other contraband, were found.

After being brought to the ATF headquarters, Mr. de los Santos answered agents' questions and made inculpatory statements.[2] Co-defendant Abrahim, a passenger in the Range Rover, also made inculpatory statements and was detained along with de los Santos. The two other individuals who were in the Range Rover, including the driver, did not make statements and were released that same day.

Defendant was subsequently indicted for Conspiracy to Commit Hobbs Act Robbery, in violation of 18 USC 1951 and 2, and Conspiracy to Distribute 5 kilograms or more of cocaine, in violation of 21 USC 846 and 841(b)(1)(A).

b. Pretrial Motions

In pretrial motions to suppress his post arrest statement, defendant argued that the police lacked probable cause to arrest him. Defendant's motions to suppress evidence obtained as a result of his arrest - based on lack of probable cause for said arrest - were denied by this Court in their entirety.

c. The Plea Agreement

Defendant eventually entered into a plea agreement with the government, and pled guilty to Conspiracy to Commit Hobbs Act Robbery and Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 USA 841 (b)(1)(B). With an adjusted offense level of 29, and a Criminal History Category (CHC) of I, defendant's stipulated guideline range was 87 - 108 months.[3]

---

[2] In a tape recorded statement made after his arrest, de los Santos told police that the proposed "robbery" was to have involved about "30 bricks". That was clearly inaccurate, as the police well knew, since the UC had been directly involved in the negotiations with the co-defendants and had discussed a much smaller amount. (See, fn. 1, *supra*). In the Complaint, however, the police nevertheless alleged the larger quantity of "25-30" kilos, apparently to conform to de los Santos' statement, even though they had to have known that it was much more than the amount of drugs intended to be "robbed" by the co-conspirators.

In any event, the "drug quantity" was clearly controlled by law enforcement, who made it high enough - *i.e.*, greater than 5 kilos - to warrant a mandatory minimum sentence of ten years, even though the cocaine was non-existent.

[3] In the PSR, the Probation Department arrived at a guidelines range of 108-135 months, based on a CHC of II, due to Youthful Offender conviction for which defendant was on Probation at the time of the instant offense.

The plea agreement permits defendant to seek a non-guidelines sentence and to suggest that the Probation Department and the Court consider a sentence outside of the stipulated guidelines range, based on the sentencing factors of 18 USC 3553(a).

**III. Sentencing Factors**

a. Sentencing Law

18 U.S.C. 3553(a) directs sentencing courts to impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) thereof. Said purposes are:
(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant and the need to provide restitution to any victims of the offense. Since United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), courts must consider all of these factors along with the advisory sentencing guidelines, and there is no question that the Court is entitled, after all relevant considerations, to impose a *non-guidelines sentence.* United States v. Crosby, 397 F. 3d 103, 111 (2d Cir 2005).

The Court's discretion in imposing sentence and its ability to deviate from the guidelines and consider each defendant's individual situation has been reaffirmed by the Supreme Court in three recent cases: Rita v. United States, 551 US___, 127 S. Ct. 2456 (2007); Gall v.United States , 128 S. Ct.586 (2007); Kimbrough v. United States, 128 S. Ct. 558 (2007).

b.  The Nature and Circumstances of the Offense

This Court is well aware of the nature and circumstances of the instant "offense", briefly summarized above. It was a sting operation, a bogus planned robbery of a drug dealer brought about by a confidential informant. The victim was non-existent, as were the narcotics. Nothing was taken and no weapons were used, nor were any weapons ever found in subsequent searches of the either of the vehicles in which defendants were riding. Certainly, there is no need for restitution since there was no victim and nothing was taken.

Further, as defendant argued in his motion papers, and in written submissions following the suppression hearing, probable cause was lacking for defendant's arrest, and the government did not meet its burden of proving the existence of same. The release of the two co-defendants who did <u>not</u> make inculpatory statements is *prima facie* evidence that there was no probable cause at the time of the arrest and it did not exist until <u>after</u> defendant made a self-incriminating sentence.

It is respectfully submitted that the Court's decision denying defendant's motion was wrong and that this presented a viable appellate issue. By pleading guilty, of course, defendant waived his right to appeal the Court's decision, thereby conserving judicial resources and sparing the government the need for further litigation. This should be taken into account by the Court in imposing sentence.

It is submitted that all of the purposes and objectives of sentencing can be achieved with a non-guidelines sentence, at the statutory minimum of 60 months, and that such a sentence is appropriate in this case and sufficient, but not greater than necessary, to serve the objectives of sentencing set forth in 18 USC 3553(a).

c. History and Characteristics of the Defendant

Bryant de los Santos is a young man of 20, who appears to be emotionally immature and vulnerable to poor influence. He is significantly younger than the other participants in this offense, and was acquainted with co-defendant de la Cruz, *aka* "Tio", who was the uncle of a young friend of his who died of cancer a few years ago.

Defendant's parents separated approximately 6 years ago, when defendant was 14. As the only boy in the family, he, somewhat misguidedly, felt he needed to help contribute to the support of the family. Defendant started working and dropped out of school before completing 10th grade. He subsequently attended two alternative schools, but dropped out of those programs as well.

Defendant has a history of smoking marijuana to deal with stressful situations. His pretrial officer had him enrolled in a 30-day residency program, Daytop, which he successfully completed. He has remained drug free since his release from the program and reports that he learned skills to help him focus and deal with situations which he is facing. He feels that the program was beneficial to him and has enabled him to focus in a positive manner.

Since his arrest, de los Santos has taken other steps to try to amend his life. Prior to being sent to Daytop, he was working at a construction job. His former boss is awaiting a permit to commence work on a new demolition project, for which he has promised defendant a job. Defendant is currently enrolled in a GED program, which he attends four afternoons a week, and is also seeking other employment while waiting for the construction job to come through.

De los Santos is the father of a baby girl who was born in November 2007. He recognizes that he will miss being present for all of her early childhood years and is determined to rectify his past mistakes so that he can build a future with his new, young family. He is demonstrating that he is capable of rehabilitation by his post arrest efforts to mend his ways.

Although defendant has previously been sentenced to Probation for a past misdemeanor and felony offense for which he received Youthful Offender status, he has never before been incarcerated. His present situation, however, has been a wake up call for him and he has expressed

determination to serve his sentence and change his life. A sentence of incarceration will likely be the deterrent that his previous sentence of Probation was not.

It is believed that a sentence of 5 years imprisonment for his involvement in the instant "offense" will more than suffice as both punishment and deterrence for this young man and that a sentence above the mandatory minimum will be more punitive than constructive. Certainly, if defendant violates any conditions of his eventual supervised release subsequent to the completion of his period of imprisonment, that can be dealt with accordingly.

It is therefore respectfully requested that the Court sentence defendant to the mandatory minimum sentence of 60 months, to be followed by a period of three years of supervised release.

Respectfully,

Louis R. Aidala
Attorney for Bryant de Los Santos

cc: Todd Blanche, AUSA